479 So.2d 280 (1985)
S.B. PARTNERS, a Limited Partnership, Appellant,
v.
Robert S. HOLMES and Jacqueline Holmes, Appellees.
No. 85-480.
District Court of Appeal of Florida, Second District.
December 6, 1985.
*281 Ted R. Manry, III, and John W. Campbell, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
David A. Maney, of Maney, Damsker & Arledge, Tampa, and Kim St. James of Levy, Shapiro, Kneen & Kingcade, Palm Beach, for appellees.
OTT, Acting Chief Judge.
Appellant appeals two nonfinal orders of the trial court which denied its motion to vacate a default and its supplemental motion to quash process or service of process. We have jurisdiction pursuant to Florida Rules of Civil Procedure 9.130(a)(3)(C)(i) and (iv). See Doctor's Hospital of Hollywood, Inc. v. Madison, 411 So.2d 190 (Fla. 1982); National Lake Developments, Inc. v. Lake Tippecanoe Owners Association, 395 So.2d 592 (Fla.2d DCA 1981), approved 417 So.2d 655 (Fla. 1982). For the reasons stated below, we reverse the trial court's order denying the motion to vacate the default and affirm the order denying the supplemental motion to quash process or service of process.
The history of the case is as follows:
Appellee Robert Holmes was employed as a maintenance worker in an apartment complex owned by appellant. On July 25, 1980, Holmes was seriously injured by electrical shock while working on or installing a hot water heater in a vacant apartment in appellant's complex. Holmes promptly filed a workers' compensation claim, and appellant has maintained an open, active file thereon.
On December 22, 1982, appellees filed a personal injury action against Florida Power Corporation for negligence. The case was placed on the trial calendar, but later removed by agreement of appellees and Florida Power so that appellees could add appellant as a party.
On May 17, 1984, the trial court granted appellees' motion to add appellant as a party defendant. The amended complaint added a count against appellant for failure to maintain the premises in a reasonably safe condition, and another count for punitive damages.
On July 25, 1984, service of process was made on "T. Goldberg as president of said corporation." Service was actually made on T. Gochberg, who is not appellant's president.[1]
On August 23, 1984, appellees filed a motion for default, and default was entered by the clerk on August 24, 1984.
On October 24, 1984, appellant filed a motion to set aside the default. Attached to the motion were its proposed answer and defenses, which included insufficiency of service of process, comparative negligence, failure to state a cause of action for punitive damages, and the unforeseen intervening acts of Florida Power in causing the injury. Appellant later amended its defenses to add the exclusive remedy of workers' compensation and to again attack the service of process.
On January 16, 1985, a hearing was held on the motion to set aside default. At the hearing, appellees objected to the trial court hearing any argument on the service of process issue at that time. Appellees primarily objected that they had not received five days notice of hearing on any motion to quash. The trial court sustained the objection. Argument was then held on the motion to set aside default, without reference to the service of process issue.
Appellant then filed a supplemental motion to quash process and service of process, or alternatively to set aside default.
On January 31, 1985, the trial court entered its order denying the motion to set aside default, finding that 1) appellant's actions in allowing the default to be entered against it did not constitute excusable neglect; and 2) appellant did not exhibit *282 due diligence after it had notice that the default was entered.
A motion for rehearing was filed and on February 15, 1985, a hearing was held on the supplemental motion and the rehearing motion. At that hearing, the trial court refused to hear evidence on the merits of the service of process issue, and further denied rehearing of its prior order. On the same day, the trial court entered an order denying the supplemental motion on the ground that appellant had waived any objection to the process by filing its original motion to set aside default.
Appellant timely appealed.
To set aside a default, a party must demonstrate both excusable neglect and a meritorious defense. Fla.R.Civ.P. 1.500(d) and 1.540(b); Canney v. Canney, 453 So.2d 179, 181 (Fla. 2d DCA 1984); Westinghouse Elevator Co. v. DFS Construction Co., 438 So.2d 125 (Fla. 2d DCA 1983). Additionally, the movant must demonstrate due diligence in seeking relief from the default. Westinghouse Elevator Co. v. DFS Construction Co. Generally, a gross abuse of discretion must be shown in order to reverse a trial court's ruling on a motion to vacate a default. A greater showing of an abuse of discretion is generally required, however, to reverse a trial court's order granting a motion to vacate a default than is required to reverse a denial of such a motion. Garcia Insurance Agency, Inc. v. Diaz, 351 So.2d 1137 (Fla. 2d DCA 1977); B.C. Builders Supply Co. v. Maldonado, 405 So.2d 1345 (Fla. 3d DCA 1981).
After reviewing the record in this case, we first conclude that appellant demonstrated excusable neglect in failing to respond to the complaint. Exactly four years from the date of Holmes' accident (July 25, 1980), service of process was made on T. Gochberg at the office of appellant's general partner in New York City.[2] According to Gochberg, he directed the complaint and summons to M. Weinberger, president of "the property management corporation" and the person who would know how to handle the papers. On the same day as he was served, Gochberg sent a note to J. Tuzzolino, vice president of appellant's general partner, directing him to log in the suit papers which Weinberger had.
Weinberger never saw the papers. Apparently, Tuzzolino's secretary received Gochberg's note, removed the papers from Weinberger's desk, and filed them in the litigation log without making sure what the papers were or if the papers had been or needed to be processed.
On September 4, 1984, B. Halperin, assistant to Weinberger, received appellees' motion for default. Halperin was the person, along with Weinberger, who received appellant's legal documents relating to liability, property damage, and workers' compensation claims. Although the motion for default was not on the standardized workers' compensation form, Halperin treated the motion as a part of the workers' compensation claim because he was aware that appellee Robert Holmes had filed such a claim. Halperin had never received a motion for default before, but knew the motion meant that the time for answering a legal claim had elapsed. In 1983 Halperin had set up a litigation file when appellees' attorney began seeking information about the incident. Upon receiving the motion for default, Halperin did not connect the two matters and did not distinguish a tort liability claim from appellee Robert Holmes' workers' compensation claim.
On September 13, 1984, Halperin called Mrs. Crute of the insurance agency which had placed appellant's workers' compensation coverage with Aetna. Crute asked him to send her the motion, stating that she would send it to Aetna. He mailed her a copy of the motion, along with a cover letter stating, in effect, to contact the attorneys representing appellant and to advise him of the status of the motion. The reason for Halperin's delay in attending to *283 the motion was that he had been out of town and had to make other reports.
On October 3, 1984, after several communications had passed between Halperin, Crute, and Aetna's supervisor for workers' compensation claims, Pawloski, Halperin learned from Pawloski that a summons and complaint had been served on Gochberg in New York. Halperin then investigated at the offices of appellant's general partner, Security Capital Real Estate Corporation, formerly Smith Barney Real Estate Corporation, and found the complaint in the litigation log. Halperin telephoned Pawloski of Aetna and then sent the papers to Aetna by regular mail. Although Pawloski knew that the default had been entered by the time of this call, she did not tell Halperin.
On October 10, 1984, Pawloski wrote to Halperin advising him that a default had been entered and appellant should contact its liability carrier immediately. Halperin received this letter on October 15, 1984, and immediately engaged counsel through appellant's liability carrier. That counsel tried unsuccessfully to convince appellees' attorney to set aside the default. On October 24, 1984, appellant's liability carrier filed a motion to set aside default.
The misfiling of the complaint here is essentially no different from the corporate mistakes found to be excusable neglect in North Shore Hospital, Inc. v. Barber, 143 So.2d 849 (Fla. 1962) (complaint not transmitted to insurance carrier when administrative offices of hospital misplaced it), and in Associated Medical Institutions, Inc. v. Imperatori, 338 So.2d 74 (Fla. 3d DCA 1976) (hospital administrator's secretary misfiled complaint in "terminated" case file instead of the "pending" case file). Cf. Overseas Development, Inc. v. Dominion Mortgage Corp., 330 So.2d 845 (Fla. 3d DCA 1976) (failure of corporate vice president in misplacing complaint and not delivering it to his counsel until after entry of final default judgment did not constitute excusable neglect). Further, the record reveals that at the time the complaint was served on appellant's general partner, Security Capital, it had just undergone a corporate reorganization, albeit an apparently disorganized one, and had several subsidiaries or parent companies and former or new officers and directors housed in the same facility. This could only contribute to the confusion about to whom and where the complaint should be forwarded. As such, we find that appellant demonstrated excusable neglect.
Additionally, appellant's defenses, with the exception of insufficiency of process or service of process, are clearly meritorious, at least facially.
Finally, the facts demonstrate appellant used due diligence in preparing a motion to vacate once it discovered the motion for default. While the almost two-month delay from the date Halperin first received notice of the motion for default (September 4, 1984) to the date of filing the motion to vacate (October 24, 1984) would seem to indicate a lack of diligence, we find that several factors indicate otherwise. First, appellee Robert Holmes' three-year workers' compensation claim added an understandable delay and confusion, on the part of both Halperin and the insurance agent, in filing the motion to vacate. Second, the misfiled complaint was not discovered until the beginning of October. Third, after all the players figured out that the complaint was different from the workers' compensation claim, speedy measures were taken to employ counsel, contact appellees' attorney, and then to file the motion to vacate.
While the above facts might suggest bureaucratic ineptitude on the part of appellant, we cannot say that they demonstrate culpable or gross negligence. See B.C. Builders Supply Co., 405 So.2d at 1347. Nor can we say that appellees have been substantially prejudiced by the delay. See Savela v. Fisher, 464 So.2d 240, 241 (Fla. 2d DCA 1985). Indeed, under these facts, we think it would be a gross abuse of discretion not to allow appellant to present its defenses. B.C. Builders Supply Co., 405 So.2d at 1347. See also Garcia Insurance Agency, Inc., 351 So.2d at 1139. This is especially true in this case because it appears that it was a Florida Power employee, *284 and not appellant or any of its employees, who actually turned on the power which caused appellee Robert Holmes' injuries.
Accordingly, we reverse the trial court's order which denied appellant's motion to vacate default and remand for further proceedings.
Appellant's second point on appeal regarding the denial of its supplemental motion to quash process or service of process is without merit. See Consolidated Aluminum Corp. v. Weinroth, 422 So.2d 330 (Fla. 5th DCA 1982) (defendant wishing to contest personal jurisdiction must do so in first step taken in case or that issue is waived). We further disagree with appellant that its initial motion for default sufficiently raised the defense of lack of personal jurisdiction. See Fla.R.Civ.P. 1.140(b) (motion raising insufficiency of process shall specifically state grounds on which it is based and substantial matters of law intended to be argued). Accordingly, the trial court's denial of appellant's supplemental motion is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.
LEHAN and HALL, JJ., concur.
NOTES
[1] Appellant claims in its second point on appeal that Gochberg was not a proper person to be served. Because of our disposition of this point, we need not and do not address this claim.
[2] It is interesting that appellant was served at the very end, if not the last day, of the statute of limitations period. See § 95.11(3)(a), Fla. Stat. (1983).